IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CANDICE L. GULLEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-417-ECM |
| | ) | [WO] |
| RICHARD FOSHEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiffs Candice Gulley ("Ms. Gulley"), Tommy Gulley, Donald A. Burdette, Randall Norman, Brenda Norman, Stuart Albea, Jason Riggs, Brandy Lee Dunnavant (collectively, "Plaintiffs")[1]—all Alabama citizens—originally brought this action in the Circuit Court of Butler County, Alabama, seeking damages arising out of a multivehicle accident which resulted in numerous deaths and many others suffering injuries. The Plaintiffs bring state law negligence and wantonness claims against Defendant General Motors LLC ("GM"), a Michigan and Delaware citizen; Defendant Fiat Chrysler

---

[1] Candice Gulley brings claims individually and as custodial parent of minor children I.G. and B.G., now deceased; Tommy Gulley brings claims as custodial parent of minor children I.G. and B.G., now deceased; Donald A. Burdette brings claims as custodial parent of minor child M.B., now deceased; Randall and Brenda Norman bring claims as custodial parents of minor child D.N., now deceased; Stuart Albea brings claims as personal representative of the estate of minor child H.M.L., now deceased; Jason Riggs brings claims as personal representative of the estate of minor child A.N.M., now deceased; and Brandy Lee Dunnavant brings claims as mother, sole legal custodian, and next friend of minor children J.A.D. and N.P.D., now deceased.

Automobiles US, LLC ("FCA"), a Netherlands and United Kingdom citizen; and Defendant Richard Foshee ("Foshee"), an Alabama citizen (collectively, "Defendants").

On July 12, 2023, GM and FCA removed the action to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1).  In the notice of removal, GM and FCA assert that the Plaintiffs fraudulently joined nondiverse defendant Foshee in an effort to defeat federal jurisdiction, and thus the Court should ignore Foshee's citizenship.  GM and FCA further assert that complete diversity exists among the Plaintiffs and the properly joined defendants—GM and FCA—and that the amount in controversy exceeds $75,000. The Plaintiffs subsequently filed a motion to remand (doc. 35), arguing that Foshee was not fraudulently joined and that the notice of removal suffers from additional procedural defects.

The Plaintiffs' motion is fully briefed and ripe for review.[2]  For the reasons explained below, the Court concludes that the Defendants have not met their heavy burden to establish that Foshee was fraudulently joined, and thus the Court lacks subject matter jurisdiction over this action.  Therefore, the Plaintiffs' motion to remand is due to be granted, and this case is due to be remanded to the Circuit Court of Butler County, Alabama.[3]

---

[2] GM and FCA filed a response in opposition, (doc. 40), and Foshee also filed an opposition in which he "join[ed], adopt[ed], incorporate[d], and realleg[ed]" the arguments in GM and FCA's response, (doc. 41).

[3] Additional motions are also pending before the Court.  Because the Court concludes that it lacks subject matter jurisdiction over this action, it also lacks jurisdiction to rule upon the pending motions.

## II.  BACKGROUND

This action arises out of multivehicle accident in June 2021 in Butler County, Alabama, which resulted in the deaths of ten people and injuries to many others.  Several different iterations of lawsuits arising out of this accident have been filed in federal and state courts in Alabama.  In this case, it is alleged that Plaintiff Candice Gulley ("Ms. Gulley") was driving a Ford van on behalf of the Alabama Sheriff's Girls Ranch ("Ranch van") north on Interstate 65 near Greenville, Alabama.  The Ranch van was occupied by minor children I.G., B.G., M.B., D.N., H.M.L., A.N.M., J.A.D., and J.P.D.   Prior to the crash, the Ranch van was traveling in the left lane alongside a 2020 Volvo Truck ("Volvo Truck") tractor/trailer owned by Royal Truck Leasing, LLC, and operated by Hansen & Adkins Auto Transport ("Hansen & Adkins") and its driver and agent, James B. Woodfork ("Woodfork"), d/b/a Woodfork Enterprises, Inc.  An 18-wheeler was also driving behind the Ranch van and the Volvo Truck driven by Woodfork.

Traffic began to form on the interstate, and when Woodfork failed to slow for the traffic, he struck a 2020 Ford Explorer and then veered into the left lane, striking the Ranch van.  The Ranch van was then struck from behind by the 18-wheeler.  A fire erupted, consuming the Ranch van and other vehicles.  Bystanders pulled Ms. Gulley from the Ranch van, but attempts to extricate the children were unsuccessful.  All of the children died in the fire.

According to the Plaintiffs, GM and FCA contracted with Hansen & Adkins to transport GM and FCA vehicles within the State of Alabama.  Foshee was the Terminal Manager for Hansen & Adkins' Birmingham terminal and Woodfork's supervisor.  The

Plaintiffs allege that Foshee had a duty to supervise and correct Woodfork's hours of service violations, falsified logs, and unsafe driving habits, such as speeding and driving while fatigued.  As a result of Foshee's allegedly negligent and wanton failure to supervise Woodfork, Woodfork was allowed to "routinely work over his hours of service by falsifying his logs dozens of times in the months before the crash," leading to Woodfork consistently driving while fatigued. (Doc. 1-4 at 38).   Foshee's failure to supervise Woodfork also allowed Woodfork to recklessly operate his vehicle, resulting in him committing numerous negligent and wanton actions which caused the crash resulting in the Plaintiffs' injuries.  According to the Plaintiffs, Foshee's failure to terminate Woodfork before the crash violated Hansen & Adkins' "internal policy to terminate drivers who have more than five violations, who falsify their logs, and who operate their trucks in negligent or careless manner so as to endanger life, limb, or property." (*Id.* at 39).

Additionally, Foshee testified in a related state court action that, in his role as Terminal Manager, his job duties are "pretty much all encompassing" and he "oversee[s] most of the operations of the terminal and the employees there," including the drivers. (Doc. 35-1 at 6).  He also testified that it is "[his] job as terminal manager" to monitor the logs of all the drivers at the Birmingham terminal to ensure safety, (*id.* at 13; 45:6–19), and that he would be notified by email if any driver drove more than 11 hours in a 24-hour period, which constitutes an hours-of-service violation, (*id.* at 12; 43:12–23, 44:1–23). Foshee elaborated that if a driver violation was recorded in the electronic systems, he would get an email about it, and he also independently logged on and checked the system several times daily for violations. (*Id.* at 6; 20:12–16).  He also acknowledged that he would be

4

notified about each of Woodfork's hours of service violations and that he had discussed hours of service violations with Woodfork over the years. (*Id.* at 14; 51:18–23, 52:1–19). Foshee further testified that there should be additional training when violations occur. (*Id.* at 15; 54:19–23, 55:1–2).

### III.  LEGAL STANDARD

This Court, like all federal courts, is a "court[] of limited jurisdiction" and "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A defendant may remove an action initially filed in state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  As relevant here, federal jurisdiction exists—and removal is proper—if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a)(1), 1441(a); *Caterpillar Inc.*, 482 U.S. at 392.   "[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).  "Because removal jurisdiction raises significant federalism concerns," federal courts must "construe removal statutes strictly," and all doubts about the existence of federal jurisdiction "should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

The removing defendant's burden to prove fraudulent joinder is a "heavy one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).  The defendant must prove by

clear and convincing evidence "that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* (quoting *Crowe*, 113 F.3d at 1538). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* at 1333 (citation omitted).

The pleading standard for surviving fraudulent joinder "is a lax one." *Id.* at 1332–33. Rather than the plausibility standard, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff can defeat an assertion of fraudulent joinder by showing that their complaint has "a possibility of stating a valid cause of action," *Stillwell*, 663 F.3d at 1333 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (emphasis in original) (citation omitted). In other words, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Id.* (citation omitted). Moreover, any uncertainties about state substantive law must be resolved in the plaintiff's favor. *Stillwell*, 663 F.3d at 1333.

To determine whether the complaint possibly states a valid cause of action, this Court must look to the "pleading standards applicable in state court," not federal court. *Id.* at 1334. The Alabama Supreme Court has explained that "a Rule 12(b)(6) dismissal is

proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Haywood v. Alexander*, 121 So. 3d 972, 974–75 (Ala. 2013) (citation omitted).

## IV. DISCUSSION

The issue before the Court is whether it has subject matter jurisdiction over this action. The Defendants contend that Foshee was fraudulently joined because Alabama law permits a negligent supervision claim only against an employer and not against an individual supervisor like Foshee. Thus, according to the Defendants, Foshee's citizenship should be disregarded, thereby preserving federal diversity jurisdiction. The Plaintiffs argue that Foshee was not fraudulently joined because their claims are premised upon the theory that Foshee is directly liable for his own negligent conduct in supervising Woodfork, rather than a theory of *respondeat superior* or vicarious liability.

Alabama law recognizes that a "master" may liable for the "incompetency" of its "servant" when it is "established by affirmative proof that [the servant's] incompetency was actually known by the master or that, had [the master] exercised due and proper diligence, [the master] would have learned that which would charge [the master] in the law with such knowledge." *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1002–03 (Ala. 1993) (citation omitted), *superseded by statute on other grounds as stated in Horton Homes, Inc. v. Brooks*, 832 So. 2d 44, 57 (Ala. 2001); *see also Lane v. Central Bank, N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983). Citing *Big B* and *Lane*, the Defendants contend that a negligent or wanton supervision claim properly lies only against an employer and not a supervisor because the existence of a master-servant relationship is an element of a negligent or

wanton supervision claim and establishing a master-servant relationship requires an employment relationship.   But *Lane* and *Big B* "involved undisputed master-servant relationships" between the complaining employee and their employer, and "no individual supervisor was sued." *Fletcher v. Lupo*, 2009 WL 10688890, at *7 (N.D. Ala. Apr. 15, 2009), *report and recommendation adopted*, 2009 WL 10688967 (N.D. Ala. May 13, 2009) (making this observation).  Cases addressing only the potential liability of a "master" for negligent supervision are not, by themselves, dispositive on the question of whether or in what circumstances a supervisor who is not a "master" may be liable on such a claim. *See id.* at *5; *Nabors v. Transouth Fin. Corp.*, 928 F. Supp. 1085, 1088 (M.D. Ala. 1996) (explaining that *Big B* did not "directly address[] the issue before the court because [the] case involved a negligent supervision claim brought **solely** against an employer rather than against both the employer and the employer's supervisor-employee" (emphasis in original)).

While the Plaintiffs concede that a supervisor cannot be vicariously liable for a co-employee's tort in the absence of a master-servant relationship, they contend that this rule "does not apply where the supervisor's liability arises from his own tortious conduct." (Doc. 35 at 10–11).  The Plaintiffs further contend that they assert a direct liability claim against Foshee, seeking to hold him liable for his own tortious conduct in failing to properly supervise Woodfork, which they allege caused the accident at issue.  In support of their position, the Plaintiffs cite, among other authorities, *Machen v. Childersburg Bancorporation*, 761 So. 2d 981 (Ala. 1999); Alabama Supreme Court decisions recognizing that corporate officers and agents are personally liable for their own torts even

8

if the tort was committed when they were acting officially, *see, e.g.*, *Inter-Connect, Inc. v. Gross*, 644 So. 2d 867 (Ala. 1994); and the Restatement (Second) of Agency § 358(1), which the Alabama Supreme Court has cited as consistent with state law, *see, e.g.*, *Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006), *as modified on denial of reh'g* (Sept. 22, 2006).

In *Machen*, the Alabama Supreme Court reversed the grant of summary judgment in favor of an employer bank as well as its chief operations officer ("COO") and chief executive officer ("CEO"), all of whom were alleged to be liable for negligence and wantonness in connection with their supervision of a subordinate employee accused of sexual harassment. *Id.* at 986–87. The court held that genuine issues of material fact existed as to whether the COO and CEO negligently or wantonly "failed to properly investigate, train, supervise, and discipline [the harasser]" where evidence showed that the COO and CEO knew about the plaintiff's allegations of sexual harassment but only verbally reprimanded the harasser, made no written report, and did not follow up with the plaintiff to determine whether the harassment had stopped, and the harassment continued. *Id.* at 987. The court concluded that a reasonable jury could find that had the COO and CEO "monitored and/or supervised the situation more carefully, [the harasser] would not have repeated the acts of misconduct." *Id.* The court did not suggest that a negligent or wanton supervision claim against a supervisor was unavailable as a matter of law, and even if no party had raised the argument, the court likely could have affirmed on that basis because the court may affirm the judgment below "on any valid legal ground." *See Smith v. Equifax*

*Servs., Inc.*, 537 So. 2d 463, 465 (Ala. 1988) (citation omitted); *see also Fletcher*, 2009 WL 10688890, at *6 (making this observation about *Machen*).

The Defendants suggest, in a footnote, that *Machen* is distinguishable because the supervisor defendants did not argue that their relationship and control over the subordinate employee was insufficient to sustain a negligent supervision claim.  The *Machen* court did observe that it was not addressing whether the COO and CEO "had the authority to investigate, train, supervise, and discipline [the harasser]" because the COO and CEO argued only that they were not negligent or wanton and not that they lacked authority or control. 761 So. 2d at 986 n.6.  But whether a sufficient relationship and control has been shown is a different question from whether a negligent supervision claim against a supervisor is categorically barred as a matter of state law.  Moreover, the Defendants' argument does not change the fact that the Alabama Supreme Court permitted a negligent supervision claim to proceed against individual supervisors and did not conclude that such a claim was unavailable, thus undercutting the Defendants' position that the claim against Foshee in this case is foreclosed as a matter of Alabama law. *See Stillwell*, 663 F.3d at 1333 (explaining that any uncertainty in the state substantive law must be resolved in the plaintiff's favor when analyzing fraudulent joinder).

Even if the Defendants are correct that a "negligent supervision" claim can only be brought against an employer, or that this claim requires a master-servant relationship and such relationship is not present here, this conclusion would not end the inquiry as to whether the Plaintiffs have "a possibility of stating *a* valid cause of action" against Foshee. *See id.* (emphasis added) (citation omitted).  As the Plaintiffs point out, "[i]t is a well settled

10

rule in [Alabama] that a person is liable for the torts which he or she commits, regardless of the capacity in which that person acts." *Inter-Connect, Inc. v. Gross*, 644 So. 2d 867, 869 (Ala. 1994) (citation omitted); *see also Ex parte McInnis*, 820 So. 2d 795, 798–99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." (quoting *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001))).  "When a person commits a tort, it is wholly immaterial upon the question of his liability[] whether he was acting officially or personally.  The reason for finding personal liability is that the agent personally has committed a wrong, independent of the principal's wrongdoing." *Inter-Connect*, 644 So. 2d at 869.  This rule, moreover, applies to torts committed by a corporation's agents in the management of the corporation's affairs. *Id.*  Citing this line of cases, the Plaintiffs contend that their claims against Foshee are premised upon the theory that he is directly liable for his own negligent conduct in supervising Woodfork in his capacity as Hansen & Adkins' Terminal Manager. The Defendants do not meaningfully respond to this argument, other than citing cases explaining that "a master-servant relationship is a subgroup of principal-agent relationships," which appears to help rather than hurt the Plaintiffs' argument on this point. (Doc. 40 at 9) (quoting *Ware*, 954 So. 2d at 552).

A related principle regarding agency liability appears in Section 358(1) of the Restatement (Second) of Agency, which the Alabama Supreme Court has cited and applied as consistent with state law, *see, e.g.*, *Ware*, 954 So. 2d at 555.  Section 358(1) provides: "The agent of a disclosed or partially disclosed principal is not subject to liability for the conduct of other agents *unless he is at fault in appointing, supervising, or cooperating with*

*them.*" RESTATEMENT (SECOND) OF AGENCY § 358(1) (emphasis added).  The court in *Fletcher* observed that while § 358(1) "rejects the idea that co-employees are vicariously liable for one another's torts," § 358(1) plainly contemplates liability for a supervisor where he is himself "at fault" in "supervising" subordinate co-agents. *Fletcher*, 2009 WL 10688890, at *6 (quoting *Ware*, 954 So. 2d at 555).[4]

The Defendants do not address the Restatement (Second) of Agency.  They rely on *Ware*, 954 So. 2d at 560, for the proposition that unless Foshee "had the ability, in his individual capacity, to select and dismiss" Woodfork, he cannot be held liable for Woodfork's conduct.  But the theory of liability at issue in *Ware* was vicarious liability. *See* 954 So. 2d at 553–54 ("Vicarious liability stemming from a master-servant relationship—respondeat superior liability—is usually a question of fact for the jury.").  So while *Ware* may stand for the proposition that holding Foshee *vicariously* liable for Woodfork's conduct requires showing that Foshee had the ability to select and dismiss Woodfork, *Ware* does not directly speak to whether the Plaintiffs have stated a possible *direct* liability claim against Foshee for his own negligence under the agency principles

---

[4] The Defendants argue that the Plaintiffs' reliance on *Fletcher*—to which the Court will refer in this footnote as *Fletcher I*—is misplaced because a later decision in that same case analyzed the plaintiffs' negligent supervision claim as a *respondeat superior* claim.  In an opinion granting summary judgment in favor of the defendants, the district court observed that the plaintiffs' claim "against [the supervisor] is premised on a theory of *respondeat superior.*" *Fletcher v. Lupo*, 2011 WL 13233198, at *6 (N.D. Ala. July 5, 2011), *report and recommendation adopted sub nom. Major Gen. Paul Fletcher v. Lupo*, 2011 WL 13233423 (N.D. Ala. Sept. 8, 2011) ("*Fletcher II*").  In support of this statement, the *Fletcher II* court cited the plaintiffs' response in opposition to summary judgment. *See id.*; (*see also* doc. 45 at 12 in *Fletcher v. Lupo*, 2:08-cv-01844-RDP (M.D. Ala. June 17, 2020)).  That the *Fletcher II* court's analysis was driven by the plaintiffs' own framing of their theory of liability is not dispositive here.  Even assuming *arguendo* that *Fletcher II* undermines *Fletcher I*, *Fletcher II* does not undermine the relevance of the Plaintiffs' other authorities.

articulated in cases such as *McInnis* and *Inter-Connect* and found in the Restatement
(Second) of Agency.[5]

The Court observes that the words "direct" or "direct liability" appear nowhere in
the Defendants' responses to the motion to remand. (*See generally* docs. 40, 41).  While
the Defendants do suggest that a negligent supervision claim is necessarily a *respondeat
superior* claim, the Plaintiffs say they are not bringing a *respondeat superior* or vicarious
liability claim against Foshee.  Instead, they seek to hold Foshee liable for *his own
negligent conduct* in connection with supervising Woodfork.  That courts have analyzed
claims against employers with the label "negligent supervision" or that federal district
courts have determined "negligent supervisions claims" cannot lie against an individual
supervisory employee does not change the substance of the Plaintiffs' allegations in this
case or that the Plaintiffs seek to hold Foshee directly liable for his own conduct.  It is well-
settled that a plaintiff is the master of his or her complaint. *See Ex parte J.E. Estes Woods
Co.*, 42 So. 2d 104, 111 (Ala. 2010); *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*,
535 U.S. 826, 831 (2002).

Other federal district courts in Alabama have recognized the viability of the
Plaintiffs' arguments.  For example, in *Fletcher*, the court concluded that the Alabama

---

[5] In the context of employer liability for an employee's intentional torts, the Alabama Supreme Court
recognizes a distinction between vicarious and direct liability:

> The employer is vicariously liable for acts of its employee that were done for the
> employer's benefit, i.e., acts done in the line and scope of employment or for acts done
> for the furtherance of the employer's interest.  The employer is directly liable for its own
> conduct if it authorizes or participates in the employee's acts or ratifies the employee's
> conduct after it learns of the action.

*Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992).

Supreme Court would hold "that an individual may in some circumstances be liable for his own negligence in connection with his supervision of a co-agent," notwithstanding the lack of a master-servant relationship between them, citing (1) "the lack of Alabama authority holding or even stating that a master-servant relationship is a necessary element of a negligent supervision claim," (2) that Alabama observes the general rule that corporate agents are personally liable for the torts they commit, (3) that *Ware* cited the Restatement (Second) of Agency § 358(1) with approval, and (4) statements in *Machen*. *Fletcher*, 2009 WL 10688890, at *7.   Additionally, another judge in this district concluded in the fraudulent joinder context that it was "unclear whether a cause of action for negligent and/or wanton supervision against a non-employer exists under Alabama law." *Nabors*, 928 F. Supp. at 1089.  *Nabors* cited, among other things, several Alabama Supreme Court decisions in which a non-employer was sued for negligent supervision and the Alabama Supreme Court "made no mention of the unavailability of a remedy for negligent supervision against a non-employer." *Id.* at 1088–89.  Additionally, *Nabors* rejected the defendants' reliance on cases such as *Big B* because *Big B* "involved a negligent supervision claim brought **solely** against an employer rather than against both the employer and the employer's supervisor-employee." *Id.* (emphasis in original).

Ultimately, the Defendants do not cite any decision from the Alabama Supreme Court or the Alabama Court of Civil Appeals holding that a direct liability claim against a supervisor premised upon his or her own negligent conduct in supervising a subordinate is not actionable.  Instead, they rely on inferences and suggestions derived from Alabama court decisions.  To be sure, some authority supports the Defendants' position.  But

14

authority also supports the Plaintiffs' position, including several Alabama Supreme Court decisions; the Restatement (Second) of Agency, which has been cited favorably by the Alabama Supreme Court (in a decision relied upon heavily by the Defendants, *Ware*, 954 So. 2d 545); and federal district court opinions.

This Court need not and does not decide whether the Plaintiffs' claim is viable under Alabama law, whether as a negligent supervision claim or a more general negligence claim premised upon Foshee's own negligent conduct in connection with his supervision of Woodfork.  Instead, the Court must merely determine whether the Defendants have satisfied their "heavy" burden of proving by clear and convincing evidence that Foshee was fraudulently joined, or whether the Plaintiffs have met their "lax" burden of showing a reasonable possibility of stating *a* valid cause of action against Foshee. *See Stillwell*, 663 F.3d at 1332–33.  In making this determination, the Court must resolve any uncertainty in Alabama substantive law in the Plaintiffs' favor, *see Stillwell*, 663 F.3d at 1333, and the Court must also resolve all doubts about the existence of federal jurisdiction "in favor of remand to state court," *see Univ. of S. Ala.*, 168 F.3d at 411.

To prevail on a negligence claim, a plaintiff must show a duty, a breach of that duty, that the plaintiff suffered a loss or injury, and that the breach caused the plaintiff's loss or injury. *Haddan v. Norfolk S. Ry. Co.*, 367 So. 3d 1067, 1072 (Ala. 2022), *reh'g denied* (May 6, 2022).  In the fraudulent joinder context, the Defendants must show that "it appears beyond doubt that [the Plaintiffs] can prove no set of facts in support of the[ir] [negligence] claim that would entitle [the Plaintiffs] to relief." *See Haywood*, 121 So. 3d at 974–75

(citation omitted).  The Plaintiffs' allegations[6] and Foshee's testimony sufficiently shows that, as Terminal Manager, Foshee had a duty to ensure that the drivers he was overseeing, including Woodfork, complied with the applicable hours-of-service regulations; that Woodfork "routinely work[ed] over his hours of service by falsifying his logs dozens of times in the months before the crash"; and that Foshee knew or should have known that Woodfork was driving excessive hours in violation of the hours-of-service regulations, based on Foshee's testimony that (1) he was notified by email about hours-of-service violations, (2) he independently checked for violations daily, and (3) he knew about Woodfork's prior violations.  Additionally, the Plaintiffs have sufficiently shown that, if Foshee had properly performed his duty to supervise and monitor Woodfork, Woodfork "never would have been on the road" the day of the accident when the Plaintiffs were injured. (Doc. 35 at 19).  Consequently, the Court finds that the Plaintiffs have adequately established a reasonable possibility of stating a valid cause of action for negligence against Foshee under Alabama law and to satisfy their "lax" burden of defeating the Defendants'

---

[6] The Defendants argue, in a footnote, that the Court should not consider the allegations in the Plaintiff's complaint because they contain no evidentiary support and are not substantiated.  This argument misunderstands the analysis applicable in the fraudulent joinder context.  The Eleventh Circuit has explained that "[t]he determination of whether a resident defendant has been fraudulently joined must be *based upon the plaintiff's pleadings at the time of removal*, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (alteration in original) (first emphasis added; second emphasis omitted) (citation omitted).  *Legg* further explains that "[t]he proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),'" and that "[i]n such a proceeding, the district court must 'resolve all questions of fact . . . in favor of the plaintiff.'" *Id.* at 1322–23 (citations omitted).  The *Legg* court did acknowledge that when a plaintiff does not dispute a defendant's *affidavit*, "the court cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the [plaintiff's] complaint." *Id.* at 1323. Here, the Defendants did not submit affidavits or other evidence to dispute the Plaintiffs' allegations.  Thus, to the extent that the Defendants argue that the Court should not consider the Plaintiffs' allegations merely because they are not supported by evidence, the Court finds this argument unavailing on this record.

assertion of fraudulent joinder. *See Stillwell*, 663 F.3d at 1332–33; *see also Machen*, 761 So. 2d at 986–87; *Fletcher*, 2009 WL 10688890, at \*9 (concluding that the plaintiffs' factual allegations concerning a negligent supervision claim were sufficient to survive a motion to dismiss under the then-applicable notice pleading standard where the plaintiffs alleged that the supervisor "occupied an important role or roles in [the companies] that gave rise to 'a duty to control the individual defendants' and that [the supervisor] 'knew or should have known that the individual defendants . . . were engaging in wrongful conduct as outlined [in the complaint]'" (fourth alteration in original) (citation omitted)). Put another way, the Defendants have not shown that "it appears beyond doubt that [the Plaintiffs] can prove no set of facts in support of the[ir] [negligence] claim that would entitle [the Plaintiffs] to relief." *See Haywood*, 121 So. 3d at 974–75 (citation omitted).

In sum, the Defendants have failed to carry their "heavy" burden to prove fraudulent joinder by clear and convincing evidence, especially given the Court's obligation to resolve any uncertainty in Alabama substantive law in the Plaintiffs' favor, *see Stillwell*, 663 F.3d at 1332–33, and to resolve all doubts about the existence of federal jurisdiction "in favor of remand to state court," *see Univ. of S. Ala.*, 168 F.3d at 411. Because Foshee may be directly liable for his own alleged negligent conduct in supervising Woodfork in his role as Terminal Manager, the Plaintiffs' complaint has a reasonable possibility of stating a claim under Alabama law. *See Stillwell*, 663 F.3d at 1333; *Legg*, 428 F.3d at 1325 n.5. This possibility is sufficient to clear the "low bar" for surviving an assertion of fraudulent joinder. *See Waits v. Kubota Tractor Corp.*, 2019 WL 4917903, at \*4 (N.D. Ala. Oct. 4, 2019); *see also Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case

17

against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)). Because the Defendants have failed to prove fraudulent joinder, complete diversity of citizenship is lacking. Therefore, the Court concludes that it lacks subject matter jurisdiction over this action, and the Plaintiffs' motion to remand is due to be granted.[7]

## V. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.      The Plaintiffs' motion to remand (doc. 35) is GRANTED;

2.      This case is REMANDED to the Circuit Court of Butler County, Alabama;

3.      The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand to the Circuit Court of Butler County, Alabama.

DONE this 27th day of March, 2024.

/s/  Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Given the Court's conclusion that complete diversity of citizenship is lacking, the Court pretermits discussion of the alleged procedural deficiencies in the notice of removal. Additionally, because the Plaintiffs' complaint possibly states a valid negligence claim under Alabama law, the Court pretermits discussion of the wantonness claim. *See Stillwell*, 663 F.3d at 1333 (explaining that there is no fraudulent joinder if there is "a possibility that a state court would find that the complaint states *a* cause of action against any one of the resident defendants" (emphasis added) (citation omitted)); *see also Waits*, 2019 WL 4917903, at *4 n.4 (similarly declining to address the plaintiff's other claims given the court's conclusion that two of the claims possibly stated a valid cause of action).